UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TIMOTHY HALO,

                              Petitioner,

    -against-

UNITED STATES OF AMERICA,

                             Respondent.
------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**06-CV-5041 (ARR)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In a motion pursuant to 28 U.S.C. § 2255, petitioner Timothy Halo ("petitioner" or

"Halo") seeks to vacate his petty offense assault conviction following a bench trial before the

undersigned magistrate judge.  On September 20, 2006, the Honorable Allyne R. Ross referred

the motion to this Court for a Report and Recommendation.  For the reasons that follow, the

Court recommends that Halo's petition be denied.

## FACTUAL BACKGROUND

Petitioner's conviction resulted from an incident that occurred at the Veterans

Administration Medical Center in Brooklyn (the "hospital"), where petitioner received medical

care and worked as a volunteer gardener.  See Transcript of Suppression Hearing/Trial, 05-

CR-0063, dated January 20, 2004[1] ("Trial Tr."), at 65.  The incident began shortly after Halo

arrived at the hospital on the afternoon of June 27, 2003.  See id. at 41–43.  Halo entered

through the building's lobby, where Henry Flores ("Officer Flores"), an on-duty police officer

with the Department of Veterans Affairs, stood talking with Nancy Montalvo-Ramos, an

---

[1] The transcript is dated incorrectly; petitioner's suppression hearing and trial were in fact held
on January 21, 2004.

employee in the hospital's pharmacy.  See id.  Officer Flores was familiar with Halo as a result

of previous encounters between the two men, including one in which Halo was cited for

disorderly conduct, one in which Halo was arrested for possessing a knife, and another in

which the officer arrested Halo on suspicion of possessing narcotics.  See id. at 15, 17, 26–27.

The following summary of events is based on the trial testimony of the three prosecution

witnesses -- Flores, Montalvo-Ramos, and the hospital's police administrator, John Thomas

Austin -- which testimony was credited by the Court:

As Officer Flores and Montalvo-Ramos talked, Halo walked by them and directed

"unpleasantries" toward Officer Flores.  See id. at 42-43, 136-37.  Halo continued past Officer

Flores toward the hospital's police operations office, where he was required to report for an

escort while inside the building.  See id. at 43, 136-37, 163.  Officer Flores followed and

began to confront Halo, who suddenly turned and punched the officer in the face.  See id. at

43–44, 138, 152–54, 163, 164, 169.  With the help of several other officers, Halo was

subdued and arrested.  See id. at 44, 138-39, 155, 164.

Halo's attorney at trial, Milton Florez ("trial counsel"), called no defense witnesses to

rebut the testimony of the government's witnesses.  See id. at 182.  Instead, during cross-

examination and in his closing argument, Florez sought to undermine the government

witnesses' testimony by identifying inconsistencies in their accounts of the incident.  See id. at

185–87; Declaration of Milton H. Florez dated July 13, 2006, at ¶ 6.[2]  Specifically, he noted

---

[2]  The Florez Declaration is attached as Exhibit A to petitioner's current counsel's Declaration in
Support of Motion Pursuant to 28 U.S.C. § 2255 dated August 11, 2006 ("Hinde Decl.").
Hereinafter, exhibits appended to the Hinde Declaration (which was docketed as ECF document
#1) will be cited as "Hinde Ex.," followed by the corresponding letter designation.

that Montalvo-Ramos had testified that the altercation occurred in the lobby, about ten feet from the door to the police operations office, whereas the two other witnesses described the incident as occurring in the office's doorway. See Trial Tr. at 185–86. Trial counsel also sought to cast doubt on whether Officer Flores had been assaulted at all, based on the lack of corroborating evidence as to the officer's injuries, and on the officer's inability to recall which side of his face Halo had punched. See id. at 187. On these bases, trial counsel argued in summation that the government had failed to prove Halo's guilt beyond a reasonable doubt. See id. at 185; Hinde Ex. A at ¶ 6.

This Court found Halo guilty of assaulting Officer Flores, concluding that the discrepancies in the witnesses' testimony were the result of understandable differences in recollection. See Trial Tr. at 190. On February 2, 2005, the Court sentenced Halo to a term of three years of probation and ordered him to pay a $100 fine.[3] Pursuant to 28 U.S.C. § 3402, petitioner filed an appeal before Judge Ross, requesting that his conviction be vacated, or, alternatively, that his sentence be reduced. Judge Ross denied the appeal, see 10/12/2005 Opinion and Order of Judge Ross,[4] and petitioner (represented by his fourth attorney)[5] subsequently filed the instant motion to vacate his conviction based on ineffective assistance of trial counsel. See generally Hinde Decl. The government submitted an opposition

---

[3] In June 2006, Halo's period of probation was changed from supervised to unsupervised. He is currently facing probation revocation proceedings, as a result of a pending assault charge in state court.

[4] Judge Ross' opinion ("10/12/05 Op.") was docketed as ECF document #75 in United States v. Halo, 05-CR-0063.

[5] All but his second attorney -- Milton Florez -- were court-appointed.

3

memorandum of law.  See generally Government's Memorandum of Law in Opposition to

Timothy Halo's Habeas Corpus Petition dated November 3, 2006 ("Gov. Mem."), docketed as

an attachment to ECF document #10.  Following a referral from Judge Ross, this Court heard

oral argument on November 16, 2006.

## APPLICABLE LEGAL STANDARDS

Section 2255 allows a person serving a federal sentence to "move the court which

imposed the sentence to vacate, set aside or correct the sentence," on the basis "that the

sentence was imposed in violation of the Constitution or laws of the United States, or . . . is

otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255; see Bellomo v. United States,

344 F.Supp.2d 429, 433 (S.D.N.Y. 2004).  If the court concludes that the petitioner's

constitutional rights have been denied or infringed so "as to render the judgment vulnerable to

collateral attack, the court shall vacate and set the judgment aside and shall discharge the

prisoner or resentence him or grant him a new trial or correct the sentence as may be

appropriate." 28 U.S.C. § 2255.  Ordinarily, a court deciding a section 2255 motion must

hold an evidentiary hearing for the purpose of making findings of facts and conclusions of law.

See id.  If, however, the record shows "conclusively" that the prisoner is not entitled to relief,

the court need not hold a hearing on the matter and may decide the motion on the basis of the

existing record.  See id.; Chang v. United States, 250 F.3d 79, 84-86 (2d Cir. 2001).  The

trial record may be supplemented to include "letters, documentary evidence, and, in an

appropriate case, even affidavits." Chang, 250 F.3d at 86.

A petitioner's claim of ineffective assistance of counsel is an appropriate basis for a

section 2255 motion.  See Massaro v. United States, 538 U.S. 500, 504–06 (2003).  Pursuant

4

to the Supreme Court's decision in <u>Strickland v. Washington</u>, a petitioner must satisfy a two-prong test in order to prevail on his ineffective assistance of counsel claim: he must establish (1) that his counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) that a reasonable probability exists that the outcome of the proceeding would have been different but for counsel's unprofessional performance.  <u>See</u> <u>Strickland</u>, 466 U.S. 668, 688-93 (1984); <u>see also</u> <u>United States v. Vegas</u>, 27 F.3d 773, 777 (2d Cir. 1994).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

It is well settled that not every error or mistake made by counsel will constitute ineffective assistance.  <u>See</u> <u>Morris v. Garvin</u>, No. 98-CV-4661(JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000) ("Just as criminal defendants are not entitled to a perfect trial, only a fair one, they are not entitled to error-free, perfect representation.").  The Supreme Court has directed courts to consider "the totality of the evidence before the judge or jury,"  <u>Strickland</u>, 466 U.S. at 695, and thus any errors by counsel "must be considered in the 'aggregate,' rather than in isolation . . . ."  <u>Curry v. Burge</u>, No. 03 Civ. 0901 LAK AJP, 2004 WL 2601681, at *26 (S.D.N.Y. Nov. 17, 2004) (citations and quotations omitted); <u>see</u> <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001).  To establish that representation was ineffective, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  <u>Strickland</u>, 466 U.S. at 689.

**PETITIONER'S CLAIMS**

Petitioner's principal argument is that trial counsel's performance was deficient because he overrode Halo's desire to testify in his own defense and failed to inform him that the decision

5

whether to testify was ultimately Halo's, even if to do so was contrary to counsel's advice. See

Hinde Decl. at ¶¶ 23–39. Petitioner also suggests that trial counsel failed to provide

constitutionally adequate assistance in other ways, in that he (1) neglected to present other

witnesses to the altercation between Halo and Officer Flores; (2) failed to adequately investigate

the backgrounds of the government's trial witnesses for purposes of impeachment; (3) chose not

to offer into evidence a hospital surveillance videotape taken at the time of the incident; and (4)

failed to call Halo's sister as a defense witness. See id. at ¶¶ 20–22.

In opposing the motion, the government contends that trial counsel's representation at

trial was adequate; it also argues in the alternative that, even if the representation did fall below

an objective standard of reasonableness, the outcome of petitioner's trial was not prejudiced so as

to warrant relief under section 2255. See Gov. Mem. at 9–18.

## I.     Petitioner's Failure to Testify at Trial

In Rock v. Arkansas, the Supreme Court acknowledged that a criminal defendant has a

constitutional right to testify on his own behalf. 483 U.S. 44, 49-53 (1987). According to the

Second Circuit, "the decision whether to testify belongs to the defendant and may not be made

for him by defense counsel." Brown v. Artuz, 124 F.3d 73, 78 (2d Cir. 1997). Additionally,

"[a]lthough counsel . . . . may strongly advise the course that counsel thinks best, counsel must

inform the defendant that the ultimate decision whether to take the stand belongs to the

defendant, and counsel must abide by the defendant's decision on this matter." Id. at 79.

### A.     The Facts Underlying Petitioner's Claim

On direct appeal, Judge Ross declined to review the issue of Halo's failure to testify,

because the trial record "contain[ed] no convincing evidence that the trial attorney either (a)

failed to inform Mr. Halo that he had a right to testify or (b) overrode Mr. Halo's decision to testify." 10/12/05 Op. at 3. The trial record has now been supplemented with two declarations that contain differing accounts on this issue. The first is that of trial counsel, who states that he advised Halo not to testify because he felt that, as a result of inconsistencies established through his cross-examination of the government's witnesses, the government had failed to prove its case beyond a reasonable doubt. See Hinde Ex. A at ¶¶ 4, 6. Further, trial counsel asserts that Halo agreed with counsel's advice that he not testify, although trial counsel could not recall whether he explained that it was ultimately petitioner's decision whether to testify irrespective of his attorney's advice. See id. at ¶ 4.[6]

Petitioner has also offered his own declaration, in which he asserts that, despite his feeling that he "had to testify because no one else had spoken on my behalf," trial counsel "told me he could not let me testify," and never explained that the decision was Halo's to make. Hinde Ex. B at ¶ 8. Petitioner argues that trial counsel thus failed to fulfill the constitutional requirement, articulated by the Second Circuit in Brown v. Artuz, that a defendant "must be allowed to testify if he so desires, regardless of strategic considerations that his lawyer concludes weigh against such a decision." Hinde Decl. at ¶ 23 (quoting Brown, 124 F.3d at 77).

To be sure, if the Court concluded that trial counsel expressly told Halo "that he had no right to testify," such conduct would fall below the required standard of reasonably effective assistance. See Chang, 250 F.3d at 84; see also Campos v. United States, 930 F.Supp. 787, 790–93 (E.D.N.Y. 1996) (concluding that counsel was ineffective where he admitted that he

---

[6] Trial counsel's declaration is silent as to his general practice in this regard.

refused to allow his client to testify in the mistaken belief that the decision was for counsel and not the client to make). However, petitioner has the burden of proving a claim of ineffective assistance, and the only evidence that Halo offers to support that claim is his own self-serving statement that he disagreed with his lawyer's strategy -- the kind of proof that, without more, courts have deemed insufficient to establish that counsel was ineffective. See Chang, 250 F.3d at 86; Frederick v. United States, No. 01 CV 7826(SJ), 2005 WL 2175904, at *16 (E.D.N.Y. Sept. 8, 2005) ("If corroborated, such an allegation [that trial counsel failed to inform the accused of his right to testify] may raise an issue on the first prong of the *Strickland* test, but without corroboration such an argument fails.") (citing Scire v. United States, No. 96-CV-3446, 1997 WL 138991, at *11 (E.D.N.Y. Mar. 24, 1997)).

As in the case at bar, the petitioner in Chang sought relief under section 2255 based on an ineffective assistance claim that his trial counsel had prohibited him from testifying. See 250 F.3d at 82. The Honorable I. Leo Glasser of this District denied the motion without an evidentiary hearing, noting that "[o]ther than his own blanket statements, [petitioner] provides no proof that [counsel] prevented him from testifying." See id. at 82, 84 (citation omitted). The Second Circuit affirmed, characterizing the allegation as a "generic claim—one that can be, and is often, made in any case in which the defendant fails to testify—based solely on his own self-serving and improbable assertions." Id. at 86. The Court of Appeals expressly held that, while such a claim could not be summarily dismissed, it was well within the district court's discretion to base its ruling on the trial record, supplemented by post-trial affidavits from the petitioner and his trial counsel, without "conducting a full-blown testimonial hearing." Id. ("[W]e cannot say that it was an abuse of discretion on the part of the district court to conclude that such a hearing

would not offer any reasonable chance of altering its view of the facts."). As Judge Glasser had presided over the petitioner's trial, he was "intimately familiar with the trial proceedings and the events and circumstances surrounding them." Id. Therefore, the trial court could "reasonably [decide] that the testimony of [petitioner] and his trial counsel would add little or nothing to the written submissions." Id.

This Court, having presided over Halo's trial, is similarly familiar with the prior proceedings in this case. Based on its knowledge of petitioner's trial and the individuals involved, the Court concludes that there is no reasonable likelihood that a hearing would add anything of value to its current understanding of the facts. See id. While the trial attorney's affidavit in Chang contained more detail than trial counsel's declaration in this case,[7] the fact remains that petitioner has offered nothing other than an ambiguous, self-serving, and unsupported statement to establish that trial counsel thwarted his desire to testify. Therefore, petitioner has failed to meet his burden of proving that trial counsel overrode his desire to testify.

In any event, even assuming *arguendo* that trial counsel failed to advise Halo that it was for him to decide whether or not to take the stand, petitioner nevertheless has not made the requisite showing under either prong of Strickland: i.e., that trial counsel's overall performance was ineffective, or that trial counsel's alleged omission prejudiced Halo's defense. Therefore, no purpose would be served by conducting an evidentiary hearing in this case.

---

[7] For example, in Chang, the trial counsel claimed in his affidavit that he had advised the petitioner that it was the petitioner's decision whether or not to testify. See Chang, 250 F.3d at 81.

9

**B.      The Reasonableness of Counsel's Advice**

That trial counsel may have failed to advise petitioner that the decision to testify belonged

to petitioner does not necessarily render his overall representation constitutionally deficient.  See,

e.g., Concepcion v. United States, 181 F.Supp.2d 206, 225 (E.D.N.Y. 2002) ("even if the Court

accepts [petitioner's] contention that [his trial attorney waived his right to testify, over petitioner's

objection,] this would not satisfy the 'deficient performance prong.'"); see also King v. Mantello,

No. CV 98-7603(SJ)(MDG), 2002 WL 32100251, at *11 (E.D.N.Y. Nov. 19, 2002) (rejecting

"petitioner's claim that counsel was ineffective for not letting him testify" where the decision

"was a reasonable strategy.").[8] Counsel "has a duty . . . to offer advice about the wisdom of

taking the stand" and, where such advice "was reasonable and proper," courts have been loathe

to sustain a claim of ineffective assistance of counsel, particularly in response to a collateral attack

on a conviction.  Duncan v. Fisher, 410 F.Supp.2d 101, 118-19 (E.D.N.Y. 2006) (rejecting a

similar challenge, where counsel's advice that petitioner not testify was "reasonable and proper");

see United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992) (rejecting, on direct appeal,

ineffectiveness challenge based on defendant's claim that his attorney should have advised him to

---

[8]  To be sure, the law is unsettled as to whether counsel's failure to properly advise the accused
of his right to testify will, without more, constitute ineffective assistance of counsel under the
first prong of Strickland.  In Brown, the Second Circuit observed that defense counsel's duty to
inform the accused of the "nature and existence of the right to testify" is a "component of the
effective assistance of counsel."  124 F.3d at 79.  However, because the Court then concluded
that the petitioner in Brown had failed to satisfy the prejudice prong of the *Strickland* test, see id.
at 80, the Court did not decide whether he had sustained his burden on the "performance" prong.
This Court is unaware of any Second Circuit decision upholding a *Strickland* challenge based
solely on counsel's failure to advise the accused that the decision to testify belonged to him.  See
generally United States v. Eppolito, 436 F.Supp.2d 532, 565 (E.D.N.Y. 2006) ("[T]he law is
unclear regarding whether [defense counsel is] required to give [the accused] a prophylactic,
Miranda-like warning or merely to determine that [the accused is] aware of, and [can] make an
intelligent decision regarding, his right to testify.").

testify on his own behalf); Carneglia v. United States, No. 03CV6388ADSARL, 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006) (counsel's "strong" advice that defendant not testify "did not fall below any standard of objective reasonableness"); Curry v. Burge, No. 03 Civ. 0901 LAK AJP, 2004 WL 2601681, at *30 (S.D.N.Y. Nov. 17, 2004) (collecting cases rejecting *Strickland* claims and concluding that, under the circumstances, "[i]t was a reasonable strategy to not put [the accused] on the stand . . . ."); Concepcion, 181 F.Supp.2d at 225-26 (any "reasonably prudent criminal defense attorney" would have counseled petitioner not to take the stand).

Here, as in Eisen and the foregoing cases, "[i]t was a reasonable tactical decision to rely exclusively on attacking the Government's witnesses . . . rather than to subject [petitioner] to all of the risk attendant on cross-examination." 974 F.2d at 265; accord Curry, 2004 WL 2601681, at *30 (rejecting right-to-testify claim where petitioner's testimony "was not likely to favorably advance his case, and it would subject him to vigorous cross-examination on all subjects."); see also Rega v. United States, 263 F.3d 18, 26 (2d Cir. 2001) (counsel's decision not to offer petitioner's testimony was reasonable where the proposed testimony would have "opened the door" to damaging evidence, and thus "would have done more harm than good."); Hinde Ex. A at ¶ 6 (stating why trial counsel concluded that Halo should not call any witnesses).

As the record reflects, offering Halo's testimony would have carried with it a variety of risks. First, the government could have sought to use his psychiatric history to attack his credibility on the witness stand. "A clinical history of mental illness is probative of the credibility of the witness." Chnapkova v. Koh, 985 F.2d 79, 81 (2d Cir. 1993) (citing United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992) ("Evidence about a [witness's] prior condition of

mental instability that provides some significant help to the [fact finder] in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately is relevant.") (internal quotations, citation omitted). The record is replete with evidence that Halo has, for decades, suffered from an organically based mental disorder that causes him to experience confusion, memory deficits, and difficulty focusing. <u>See</u>, <u>e.g.</u>, Presentence Letter to the Court dated December 29, 2004, from defense counsel Douglas G. Morris, in <u>United States v. Halo</u>, 03 MJ 1626, at 2; Letter to the Court dated February 11, 2004, from Dr. Paul Salkin, in <u>United States v. Halo</u>, 03 MJ 1626. Such information would have been relevant to Halo's ability to testify accurately, giving trial counsel a legitimate reason to advise his client against testifying.

Second, trial counsel could have had a similarly legitimate concern about his client's demeanor on the witness stand. Evidence of a witness's lack of credibility "may be found in the witness's demeanor and his answers, if the pattern and substance of those answers convinces the court that the answers are inherently incredible." <u>In re Weiss</u>, 703 F.2d 653, 667 (2d Cir. 1983) (citation omitted); <u>accord</u> <u>Ortega v. Duncan</u>, 333 F.3d 102, 107 (2d Cir. 2003) (district court entitled to discount witness testimony based on its observation of the witness's demeanor at trial). In the more than three years that petitioner has appeared before this Court in conferences and hearings, the Court has had numerous opportunities to observe petitioner's courtroom demeanor. He has often come across as unpredictable: confused, paranoid, and (whether intentionally or not) given to exaggeration and misrepresentation. <u>See</u>, <u>e.g.</u>, Transcript of Criminal Cause for Sentencing, 05-CR-0063, dated April 20, 2004, at 16. Trial counsel, presumably, made similar observations about his client, giving rise to a well-founded concern that Halo would have appeared to be an unreliable witness – another reasonable basis for advising Halo that he not

testify at trial.

Third, petitioner's criminal history would have furnished another reason to counsel him not to take the witness stand. As the government notes, Halo has a lengthy "rap sheet," including arrests for assault, harassment, and resisting arrest, the latter of which resulted in petitioner's conviction in 1993. See Gov. Mem. at 17, 6 (citing Presentence Investigation Report at ¶¶ 12-23). Because the admissibility of a prior conviction as impeachment evidence turns on the precise nature of the testimony of the accused, a defendant in a criminal case is not entitled to an *in limine* ruling on the admissibility of such evidence. See generally Luce v. United States, 469 U.S. 38, 41-42 (1984). Consequently, if Halo had testified, he would have run the risk that the government would have been permitted to examine him about his prior conviction and/or criminal acts for the purpose of impeaching his credibility (see Fed. R. Evid. 609) or rebutting assertions that he may have uttered from the stand. See Rega, 263 F.3d at 22 (noting that, had defendant testified, his denial of involvement in pornographic films "would have opened the door to introduction of the state court conviction involving pornographic films."); see also United States v. Casamento, 887 F.2d 1141, 1171-72 (2d Cir. 1989); United States v. Lopez, 979 F.2d 1024, 1034 (5th Cir. 1992) ("Extrinsic evidence, which includes prior convictions, is admissible under the general standards of Rules 402 and 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice."). Particularly in light of the issues already identified regarding petitioner's courtroom demeanor and unpredictability, trial counsel would have been justified in fearing that petitioner would inadvertently say something on the witness stand that would open the door to the admission of aspects of his criminal history. Thus, it was entirely reasonable for trial counsel to advise

petitioner that it was not in his best interest to testify.

Finally, Halo's uncorroborated trial testimony might well have led the Court "to conclude that his unsupported contradictions of the ample evidence against him were lies and probative of guilt rather than innocence." Rega, 263 F.3d at 25. Significantly, a defendant who perjures himself at trial risks the imposition of a harsher sentence. See United States v. Grayson, 438 U.S. 41, 55 (1978).

Thus, in view of all of the foregoing risks, trial counsel had ample justification for choosing to mount a defense that consisted solely of attacking the credibility of the government witnesses, and he did not thereby render ineffective assistance of counsel. See, e.g., Carneglia, 2006 WL 148908, at *4 (rejecting petitioner's *Strickland* claim that trial counsel "forced" him not to testify; under the circumstances, counsel's advice "did not fall below any standard of objective reasonableness").

### C.     Prejudice

In any event, even assuming that trial counsel's omission rendered his performance objectively unreasonable, petitioner fails to satisfy Strickland's prejudice prong, as he has not shown "how his testimony had a reasonable probability of changing the outcome of the proceedings." Frederick, 2005 WL 2175904 at *16 (rejecting similar right-to-testify challenge); see United States v. Eppolito, 436 F.Supp.2d 532, 565 (E.D.N.Y. 2006) (same); Carneglia, 2006 WL 148908, at *5 (same).

According to petitioner, he would have testified that, rather than being an aggressor, he was the victim of an assault by Officer Flores, who, he claims, followed petitioner to the door of the police operations room, where the officer "slammed his body into" Halo. Hinde Ex. B at ¶

14

5.  Petitioner would have denied having hit Officer Flores, id., and would have described a series of previous incidents between the two men that allegedly would have demonstrated Officer Flores's history of initiating confrontations with Halo and preparing exaggerated or false reports thereof.  See Hinde Decl. at ¶ 36.  Presented with this testimony, petitioner argues, the Court would have concluded that petitioner was the victim of an assault by Officer Flores, who then lied about his role in the incident.  See id.

Even if petitioner had so testified at trial, there is no reasonable probability that this Court's verdict would have been different.[9]  As for the previous encounters between Halo and Officer Flores, the Court was made aware of those prior encounters, see Trial Tr. at 15–17, 26-27, which could just as easily indicate petitioner's bias against the officer.  Morever, petitioner has no proof, other than his unsupported characterizations, that Officer Flores provoked these prior encounters or subsequently gave dishonest accounts of them.

As none of petitioner's proposed testimony would have been corroborated, it is akin to that at issue in Rega, where the petitioner moved to vacate his conviction because, he alleged, his attorney refused to permit him to testify at trial.  See 263 F.3d at 19.  Concluding that Rega's proposed testimony "provided no evidence of significance that is not wholly dependent on either

---

[9]  In arguing that he was prejudiced by his failure to take the stand, petitioner mistakenly relies on the harmless-error analysis described by the Supreme Court in Delaware v. Van Arsdall, 475 U.S. 673 (1986), see Hinde Decl. at ¶ 35, which, in contrast to this case, involved a violation of the defendant's constitutional right to confront the witnesses against him.  However, the Court in Van Arsdall expressly distinguished *Strickland* violations, which involve an entirely different analysis, pursuant to which the defendant is required to show outcome-determinative prejudice with respect to the trial *as a whole*.  See 475 U.S. at 679-80. To the extent that the Second Circuit has applied the Van Arsdall test in evaluating prejudice under Strickland, it has done so only in the context of a Confrontation Clause claim.  See Mason v. Scully, 16 F.3d 38, 44 (2d Cir. 1994).  Hence, the Van Arsdall harmless-error analysis does not apply to the present case.

his credibility, or on the incredibility of the witnesses against him," the Second Circuit reversed the trial court's decision vacating the conviction.  Id. at 22.  The Court of Appeals held that in the circumstances presented, "[a]ny probability of an acquittal . . . must be based on an assessment that, if Rega had testified, the jury would have credited his testimony, notwithstanding the substantial evidence against him."  Id.  So too here, Halo's proposed, uncorroborated testimony rests solely on his own credibility -- as weighed against the contrary testimony of three prosecution witnesses that *this Court* has already found to be credible.[10]

Furthermore, a petitioner's claim will fail under Strickland's prejudice prong if, as a result of the proposed testimony, "the probability of a conviction would have increased because [the] testimony would have been severely undermined by impeachment evidence."  Rega, 263 F.3d at 22.  As has already been shown, see *supra* pp. 11-13, trial counsel had reason to fear that his client would not provide credible testimony:  Petitioner's psychiatric problems, and his apparent difficulties with impulse-control, would have made him a poor witness, particularly in an assault case.  Additionally, there was a reasonable likelihood that, on cross-examination, he would have been impeached by evidence of his psychiatric and criminal histories.  See id.  The Court finds no reason to believe that it would have credited petitioner's testimony over that of the prosecution's witnesses.  Finally, petitioner's testimony not only would have likely increased the probability of a conviction, it likely would have earned him a harsher sentence.  Therefore, petitioner has not made the requisite showing of prejudice, and accordingly, his claim fails under Strickland.

---

[10]  In contrast, the Court in Rega had to consider the impact of the proposed testimony on a jury and nevertheless concluded that the factfinder would probably have rejected Rega's testimony.

**II.     Failure to Pursue and Offer Exculpatory Evidence**

**A.     Identification of Additional Witnesses**

In addition to his claim that he was prevented from testifying at trial, petitioner suggests that trial counsel provided ineffective assistance in failing to locate and present at trial any other witnesses to the altercation between petitioner and Officer Flores, "even though a number of other hospital employees and patients were near the police office at the time and may have offered helpful testimony . . . ." Hinde Decl. at ¶ 22(a). It is well settled that in preparing his client's case, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Importantly, however, the duty to investigate "does not . . . compel defense counsel to investigate comprehensively every lead or possible defense . . . or 'to scour the globe on the off-chance something will turn up.'" Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (quoting Rompilla v. Beard, 545 U.S. 374, 383 (2005)). To the extent that counsel determines that additional investigation "would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Greiner, 417 F.3d at 321 (quoting Strickland, 466 U.S. at 691).

In this case, trial counsel made his first appearance as petitioner's attorney a week before trial, nearly seven months after the assault on Officer Flores. See 1/15/04 Minute Entry, 05-CR-0063 (adjourning trial until 1/21/04). According to his declaration, in preparing for trial, trial counsel and his assistant, along with Halo, spent time at the hospital interviewing witnesses. See Hinde Ex. A at ¶ 3. Even assuming *arguendo* that such investigation in the limited time available before trial failed to meet an objective standard of reasonableness, petitioner neither names any

witnesses who could have been called to testify, nor shows any evidence as to what their trial testimony would have been.  "[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."  <u>Simmons v. Gramley</u>, 915 F.2d 1128, 1133 (7th Cir. 1990) (internal quotation marks omitted).  Therefore, as petitioner's current counsel was constrained to concede during oral argument, <u>see</u> Transcript of Civil Cause for Oral Argument dated November 16, 2006 ("Oral Arg. Tr."), at 27–28, petitioner's claim must fail under <u>Strickland</u> because he has not shown how the outcome of his trial was affected.  <u>See</u> <u>Carneglia</u>, 2006 WL 148908, at *4 (rejecting similar challenge to failure to call defense witnesses, where "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them."); <u>Croney v. Scully</u>, No. CV-86-4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) ("Petitioner's contention that assignment of an investigator would have been helpful to his defense is conclusory and speculative. Petitioner must show not only that the testimony would have been favorable, but also that the witness would have testified at trial.").

**B.    Impeachment of Government Witnesses**

Petitioner similarly claims that trial counsel failed to adequately investigate the backgrounds of the government witnesses for the purposes of impeachment at trial.  <u>See</u> Hinde Decl. at ¶ 22(b).  Petitioner specifically faults trial counsel for failing to investigate further after being told by the government that "none of the witnesses have information in their personnel files that tend [to] impeach their credibility, and none have been subject to disciplinary action."  <u>Id.</u> (quoting 12/29/03 Gov. Letter).  Petitioner does not indicate what additional efforts trial counsel

should have made, nor what information would have been uncovered had he continued to investigate. Notably, while petitioner claims to have told trial counsel that he had filed complaints against Officer Flores prior to their June 27, 2003 altercation, see id., petitioner offers no evidence whatsoever that any such complaint was in fact filed.[11] Again, without any showing as to how additional investigation into the backgrounds of the government's witnesses would have borne fruit, petitioner's argument does not satisfy Strickland's prejudice requirement.

### C.   The Surveillance Video

Petitioner also claims that trial counsel erred in failing to properly investigate and offer into evidence a hospital surveillance tape taken at the time and location of Halo's altercation with Officer Flores. See id. at ¶ 22(c). The videotape apparently does not show the incident itself; rather, according to Halo, it shows Nancy Montalvo-Ramos standing at a location in the lobby where it purportedly would have been impossible for her to see the doorway to the police office—where, according to the two other government witnesses, the fight occurred. See Hinde Ex. B at ¶ 3.[12] Halo concludes that Montalvo-Ramos therefore "was either mistaken or not truthful when she claimed to have witnessed what happened when I was at the office door." Id. at ¶ 4.

Petitioner's challenge overlooks the fact that "[d]ecisions relating to the presentation of evidence involve strategic choices. When these choices are made after a thorough investigation of the relevant law and facts, they are virtually unchallengeable." Clerkin v. Bartlett, No. CV 90-

---

[11] Halo's declaration is silent on this issue. See Hinde Ex. B at ¶ 6.

[12] Montalvo-Ramos recalled that the incident occurred in the hallway outside the police office. See Trial Tr. at 144, 156.

1368(RR), 1990 WL 252283, at *9 (E.D.N.Y. Dec. 31, 1990) (internal quotations, citation omitted).  Trial counsel viewed the surveillance tape.  <u>See</u> Hinde Ex. A at ¶ 3.  The only evidence that he acted unreasonably in failing to offer the tape into evidence consists of petitioner's unsupported assertions about its contents.[13]

Regarding the tape's supposed impeachment value, it strains credulity to suggest that, having watched the tape, trial counsel would have failed to offer it into evidence if it truly established what petitioner describes.  Trial counsel was well aware of the significance of Montalvo-Ramos's vantage point during the altercation.  He cross-examined her about where she was standing when the assault occurred, even asking her to indicate her position on a floor plan of the hospital lobby.  <u>See</u> Trial Tr. at 147–58.  In this way, he was able to bring out an inconsistency between Montalvo-Ramos's testimony and that of the other eyewitnesses.  <u>See</u> <i>supra</i> pp. 2-3.  Presumably, he would have offered the tape as evidence if he had considered it probative on the issue.   In addition, the reasonableness of trial counsel's decision not to offer the tape is substantiated by the fact that it was later viewed by a subsequent attorney for Halo, Douglas G. Morris, who apparently came to a similar conclusion and thus determined not to move for post-trial relief on the basis of the tape.  <u>See</u> Transcript of Criminal Cause for Status Conference dated July 20, 2004, 05-CR-0063, at 6–7, 11, 14–15.  Inasmuch as two competent attorneys independently viewed the tape and failed to cite any exculpatory information contained therein, and as petitioner has not submitted the tape as evidence, the Court concludes that this

_____

[13] Even petitioner's present counsel, who urges that the Court credit petitioner's description of the contents, concedes that she has not watched the tape.  <u>See</u> Oral Arg. Tr. at 22.

portion of plaintiff's claim is without merit.[14]

### D. Proposed Testimony of Thea Halo

Finally, petitioner suggests that trial counsel was remiss in failing to offer the testimony of his sister, Thea Halo, who would have testified that petitioner had never previously "acted or even reacted violently to any situation." Hinde Decl. at ¶¶ 20–21; Hinde Ex. C at ¶ 2. An attorney's decision not to call a witness "is a trial-strategy decision," to which courts typically defer. Greiner, 417 F.3d at 322-23 (reversing grant of writ); see Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003) ("[D]efense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that [courts] are reluctant to disturb."); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (counsel's decision "whether to call specific witnesses -- even ones that might offer exculpatory evidence -- is ordinarily not viewed as a lapse in professional representation.").

Trial counsel made a reasonable strategic decision not to call Ms. Halo to the witness stand. See Hinde Ex. A at ¶ 6. The questionable probative value of her character evidence in support of her own brother was outweighed by the risk that portions of petitioner's criminal history could have been admitted into evidence both to impeach her credibility and, depending on her precise testimony, to contradict her assertion that Halo had never before acted violently. See Fed. R. Evid. 405(a) (once a party, on direct examination, opens the door to character or reputation evidence, then "[o]n cross-examination, inquiry is allowable into relevant specific

---

[14] Petitioner also claims that trial counsel was ineffective insofar as he did not seek to have the tape analyzed by an expert to determine whether the tape had been tampered with to remove exculpatory evidence. See Hinde Decl. at ¶ 22(c). Again, the only indication of tampering is petitioner's unsupported assumption, which, for the reasons already stated, the Court finds to be baseless.

instances of conduct"); <u>Lopez</u>, 979 F.2d at 1034. Given the "significant potential downside" to calling Ms. Halo, trial counsel cannot be faulted for rejecting that option. <u>Greiner</u>, 417 F.3d at 319, 324 (internal quotation marks and citation omitted). In any event, petitioner has failed to show that "additional evidence would have made it reasonably likely that the [Court] would have reached a different result." <u>Schmidt</u>, 105 F.3d at 90.[15]

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that petitioner's motion be denied.

Any objection to the recommendation contained herein must be filed with the Honorable Allyne R. Ross by February 15, 2007. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 982 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to docket and serve this Report and Recommendation through the Electronic Case Filing System.

**SO ORDERED**

**Dated:**     **Brooklyn, New York**
           **February 5, 2007**

                          **ROANNE L. MANN**
                          **UNITED STATES MAGISTRATE JUDGE**

---

[15] Ms. Halo also would have testified that she observed her brother's injuries following his arrest on June 27, 2003. <u>See</u> Hinde Ex. C at ¶ 2. However, that Halo may have been injured was not inconsistent with the testimony of the government's witnesses as to the need to subdue him to effect his arrest.